**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

MARGARET CRITTENDON,

    Plaintiff,

v().                                                                     Civil Action No. 2:13-cv-567

ARAI AMERICAS, INC., et al.,

    Defendants.

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS ARAI AMERICAS, INC. AND JUNICHI FUKANO'S PARTIAL MOTION TO DISMISS COMPLAINT**

The Plaintiff, Margaret Crittendon, files this brief in opposition of the Defendant Arai Americas, Inc. ("Arai") and Junichi Fukano's ("Fukano") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff and Defendant Fukano will be submitting an agreed upon Order agreeing to Dismiss Counts I as it relates to Fukano; therefore, there is no response to Defendant Fukano's arguments concerning Count I contained herein.

**RELEVANT FACTS**

The Plaintiff incorporates all facts from the complaint as alleged therein as well as all exhibits attached thereto. Plaintiff was previously employed with Arai Americas, Inc. as the Senior Vice President and worked at Arai Americas, Inc. Virginia Beach, Virginia facility until her employment was terminated on August 13, 2012. Defendant, Junichi Fukano, is President of Defendant, ARAI Americas, Inc. Fukano made false, defamatory comments about Plaintiff, violated the Family and Medical Leave Act and intentionally caused severe emotional distress to Plaintiff. Junichi Fukano is an Employer for the purposes of the Family

1

and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* Am. Comp. ¶¶ 15, 16. Throughout her employment Plaintiff experienced racial, sex and national origin discrimination and Japanese executives made derogatory racial remarks about women, blacks, and Americans including Plaintiff, referring to her as monkey, gorilla, or toad on many occasions. Am. Comp. ¶¶ 21-23. These comments were made openly in the presence of interpreters by top executives of the Arai Americas, Inc. Throughout her employment, Plaintiff was paid less than similarly situated Japanese executives, who were Males. Plaintiff voiced an internal complaint regarding the pay disparity to Goichi Mori, former president of Arai Americas, Inc. Goichi Mori, promised Plaintiff shares and/or stock options in the company. On or about April 19, 2012, while meeting in Lincolnton, North Carolina, Goichi Mori, informed Plaintiff that he could not follow through on the promise to give her shares in the company because he could not convince the other Japanese shareholders to give Plaintiff shares in the company because she was a black woman.

Between July 1, 2012 and August 23, 2012 and thereafter, Adrian Speller, Deborah Ragsdale, Nicole Francis, Junichi Fukano, and other Aria Americas, Inc. employees, fabricated information and asked employees to file false complaints against Plaintiff in an attempt to injure her reputation and have her employment terminated. Am. Comp. ¶ 80. Specifically, Adrian Speller, Deborah Ragsdale, Nicole Francis, Junichi Fukano, and other Aria Americas, Inc. employees informed employees and others in the business community that Plaintiff had stolen money from the company and committed other financial improprieties. Between July 28, 2012 and August 13, 2012 and thereafter, Toshiro Kezuka and Junichi Fukano informed groups of employees that Plaintiff was planning a drive by shooting at the facility, which was false. Am. Comp. ¶ 82. Adrian Speller, Human Resources

Manager for Arai Americas, Inc., encouraged employees in January 2013 to voice false complaints about Plaintiff's restaurant to the Chesapeake Health Department, reporting that they became ill from eating at the restaurant in an attempt to injure Plaintiff in her profession or trade.  The Chesapeake Health Department received complaints from individuals stating that they became ill from eating at the restaurant in January 2013, prior to the restaurant being opened for business. Am. Comp. ¶¶ 93- 94. On or about April 2013, Adrian Speller, Human Resources Manager for Arai Americas, Inc., intentionally terminated Plaintiff's health insurance coverage or intentionally failed to renew Plaintiff's health insurance coverage, causing severe emotional distress to Plaintiff.  Am. Comp. ¶ 100.

## **STANDARD OF REVIEW**

Under the standards set forth in the Federal Rules of Civil Procedure and the interpretation of those rules by the Supreme Court of the United States, the complaint in the case at bar is sufficient and not subject to dismissal under a 12(b)(6) motion because it states "on its face [] a plausible claims upon which relief can be granted." *Francis v. Giacomelli*, 588 F. 3d 186, 186.

F.R. Civ. P. 8(a)(2) states that the Complaint must contain a "short plain statement of the claim showing that the pleader is entitled to relief," while F.R. Civ. P. 12(b)(6) allows the court to dismiss a complaint that "[fails] to state a claim  upon which relief can be granted." The Supreme Court has interpreted these rules in conjunction to require a standard of sufficiency based on plausibility.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949-52 (2009); *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555-570 (2007).  Under this standard the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level," and "state a claim to relief that is plausible on its face." *Twombley*, 550

U.S. at 544, 555, 570. This standard "does not require detailed factual allegations" but simply that the complaint must contain enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and citations omitted). The Court in *Iqbal*, relying on *Twombley* established a standard that differentiates between factual allegations and legal conclusions. While factual allegations in the complaint must be taken as true for the purpose of deciding a 12(b)(6) motion, legal conclusions do not. *Id.* at 1949-50. This does not mean however, that legal conclusions have no place in the pleading, as they "can provide the framework of a complaint." *Id.* at 1950. Simply because a complaint contains legal conclusions does not mean it may be dismissed if they are supported by factual allegations. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* The determination of plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (internal quotations and citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. The Fourth Circuit has adopted and applied this plausibility standard in *Francis v. Giacomelli*, 588 F. 3d at 186 (4th Cir. 2009).

      The Court in *Iqbal* recommended that to discern whether a complaint reaches this middle ground between possibility and probability courts should distinguish between factual allegations and legal conclusions in the complaint, assume the facts are true, and use their common sense to determine whether the plaintiff is eligible for relief based on reasonable inferences and conclusions from those facts. *Iqbal*, 129 S. Ct. at 1949-50. In the case at bar, the plaintiff laid out and incorporated the facts summarized above in detail throughout the

4

complaint. Her legal conclusions provide the framework for her complaint as they apply the factual allegations to the elements to be proved.

## ARGUMENT

### A. Count V Should Not Be Dismissed; Plaintiff Has Stated a Prima Facie Case Of Intentional Infliction of Emotional Distress

In order to state a cause of action for Intentional Infliction of Emotional Distress without any physical injury, the plaintiff must allege that 1) the conduct by the defendant is intentional or reckless and that the defendant knew or should have known that emotional distress would likely result; 2) the conduct was "outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;" 3) a causal connection exists between the defendant's actions and the emotional distress; and 4) the distress is severe. *Womack v. Eldridge*, 215 Va. 338, 342 (1974).

1. **Defendant's actions were intentional and the defendant knew or should have known that the actions would likely result in emotional distress.**

Defendant incorrectly relies on *Ruth v. Fletcher*, 237 Va. 366 to support her position. In Ruth, the defendant convinced the plaintiff that the child she carried was his, despite the fact that she had had sexual relations with a different man within the week of conception. *Id.* at 368. The defendant never expressed any doubt as to the identity of the natural father and was strongly opposed to any paternity tests. *Id.* at 369-70. She also told the plaintiff's friends and family that the child was his. *Id.* at 369. Because the plaintiff believed that he was the father of the child he did most everything the defendant asked regarding the child, save paying child support. *Id.* at 370. The plaintiff and his family developed a strong relationship with the child. *Id.* at 371. A chance encounter with the other person whom the defendant had

5

sexual relations with gave her doubts that the child was his and not the plaintiff's. *Id.* The defendant did not tell the plaintiff about this until two years later when her husband wanted to adopt the child. *Id.* At trial the plaintiff stated that he did not believe that the defendant deliberately intended to hurt him. *Id.* at 372.  The court held that the defendant's actions were not intentional or reckless. *Id.* at 373

Defendants Arai and Fukano contend that the actions taken in *Ruth* were more egregious than the present case and therefore this court should reject Count V as a matter of law.  However, *Ruth* and the present case are distinguishable.  First, the defendant in *Ruth* made an honest mistake and did not become aware of the mistake until after the actions in question had been performed, whereas in the present case Defendants Arai and Fukano knew that the statements that were being made were untrue at the time they were made. Am. Compl. at ¶¶ 3, 35-40, 97-99.  Secondly, in *Ruth* the plaintiff himself stated that he did not believe that the defendant committed the acts deliberately; in the present case Plaintiff has alleged that the false statements made by the defendants were done with the intent to injure the plaintiff.  Am. Compl. at ¶¶ 33.

The false statements in our case were made knowing that they were false, with the intent to injure the plaintiff, thus the actions by the defendants were intentional or, at the very least, reckless.  Defendants knew or should have known that their actions would result in emotional distress.

   2. **Defendant's actions were "Outrageous and Intolerable"**

In order for the second prong of Intentional Infliction of Emotional Distress to be met, the defendant's actions must be such that they "go beyond all possible bounds of decency, and [are] regarded as atrocious, and utterly intolerable in a civilized community." *Russo v. White*,

6

241 Va. 23, 27, 400 S.E.2d 160, 162 (1991) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. D (1965)).  Defendants mischaracterizes the present case as one of wrongful termination and thus asks the Court to dismiss this claim because a termination, regardless of how callous, is not outrageous or intolerable.  The cases cited by Defendants in support are distinguishable from the present case by that fact that none of the employers took any affirmative action to harm the employee beyond an alleged wrongful termination. *See Talbert v. City of Charlottesville*, 45 Va. Cir. 142, ; *Johnson v. Plaisance*, 25 Va. Cir. 264; *Ellinson v. St. Mary's Hospital*, 8 Va. Cir. 330.  In our case, the Defendants' conduct was outrageous and intolerable and resulted in significant injury to Plaintiff.

     Plaintiff  sufficiently plead that the conduct by Defendants was outrageous and intolerable.  Plaintiff agrees that simply creating a hostile work environment and terminating the Plaintiff's employment, although reprehensible, would not rise to a degree of outrageous and intolerable behavior to establish a claim.  However, in our case, Defendants went further than an alleged wrongful termination.  In our case, Defendants intentionally and recklessly spread false statements spread amongst the Virginia Beach business community that Plaintiff was terminated because she stole money from the company, planned a drive by shooting, and even after Plaintiff's employment was terminated, encouraged others to file false complaints that the food at Plaintiff's restaurant caused people to become ill.  Am. Compl. at ¶¶ 35, 40, and 99.  Defendants went above and beyond creating a hostile work environment, attacking the character and reputation of the Plaintiff, accusing her of committing crimes of moral turpitude, colluded with other ARAI employees to spread this information to the Virginia Beach business community and after her employment was terminated, intentionally canceled her health insurance and encouraged others to file false complaints about Plaintiff's restaurant

7

with the health department.

   3. **A Causal Connection Exists Between the Intentional, Outrageous, and Intolerable Conduct and Plaintiff's Emotional Distress**

Plaintiff sufficiently plead that the facts establish a causal connection between Defendants' intentional, outrageous, and intolerable conduct and Plaintiff's extreme emotional distress. Defendants mischaracterize Plaintiff's pleading as failing to present any facts evidencing a causal connection between Defendants' actions and the emotional distress suffered by Plaintiff.

Plaintiff has sufficiently detailed facts establishing that Defendants' conduct was directly related to severe emotional distress. For example, as a result of her termination, Plaintiff suffered a loss of income and fringe benefits. As a result of the acts of discrimination, plaintiff suffered emotional harm and harm to her reputation. Am. Compl. ¶¶ 58, 59. Plaintiff has suffered, continues to suffer, and will in the future suffer injury and damages, including embarrassment, inconvenience, humiliation, severe mental anguish, pain, suffering, loss of income, litigation expense, including attorneys' fees, medical expense, consequential damages, and other injuries. Am. Compl. ¶ 62. Plaintiff has suffered and continues to suffer injury and damage, including loss or denial of employment, past and future loss and denial of income, including wages, employment benefits, interest and other past and future pecuniary losses. Am. Compl. ¶ 78.

**4. Plaintiff's Emotional Distress is Severe**

In order to properly allege the fourth element of the claim (i.e., that the distress was "severe"), it is insufficient to make mere conclusory statements regarding severity. *See Russo v. White*, 241 Va. 23, 400 S.E.2d 160, 163, 7 Va. Law Rep. 1253 (Va. 1991); *see also*

8

*Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (noting that courts need not "accept as true a legal conclusion couched as a factual allegation"). In *Russo*, the Virginia Supreme Court indicated that a claim for intentional infliction of emotional distress was inadequate where the plaintiff alleged "she was nervous, could not sleep, experienced stress and "its physical symptoms," withdrew from activities, and was unable to concentrate at work" but did not allege "any objective physical injury caused by the stress, that she sought medical attention, that she was confined at home or in a hospital, or that she lost income." *Russo*, 400 S.E.2d at 163. In our case, Plaintiff's emotional distress was sufficiently severe, as Plaintiff has alleged that she has suffered, continues to suffer, and will in the future suffer injury and damages, including embarrassment, inconvenience, humiliation, severe mental anguish, pain, suffering, loss of income, litigation expense, including attorneys' fees, medical expense, consequential damages, and other injuries. Am. Compl. ¶ 62. As a result of her termination, Plaintiff suffered a loss of income and fringe benefits. As a result of the acts of discrimination, plaintiff suffered emotional harm and harm to her reputation. Am. Compl. ¶¶ 58, 59. Plaintiff has suffered, continues to suffer, and will in the future suffer injury and damages, including embarrassment, inconvenience, humiliation, severe mental anguish, pain, suffering, loss of income, litigation expense, including attorneys' fees, medical expense, consequential damages, and other injuries. Am. Compl. ¶ 62. Plaintiff has suffered and continues to suffer injury and damage, including loss or denial of employment, past and future loss and denial of income, including wages, employment benefits, interest and other past and future pecuniary losses. Am. Compl. ¶ 78. Clearly, Plaintiff's emotional distress was sever and sufficiently plead and Amended Complaint satisfies the standard established in *Russo*.

9

## CONCLUSION

The Defendants' Motion to Dismiss Complaint pursuant to F.R. Civ. P 12(b)(6) should fail because the plaintiff has submitted a complaint that contains sufficient facts to support a claim for relief that is plausible on its face. The complaint at issue is not devoid of factual allegations and full of baseless conclusions. Rather, the complaint contains significant facts, as well as supporting exhibits, that sufficiently support the legal conclusions contained therein. The standard of review set forth under the Federal Rules and Supreme Court jurisprudence require that the claims be plausible, not probable or proved. Based on the facts as alleged, reasonable inferences can be made that the Plaintiff can establish her Intentional Infliction of Emotional Distress and FMLA claims. Any contention as to the facts as alleged in the complaint constitute a genuine issue of material fact that is to be adjudicated by the finder of fact. Therefore, the plaintiff hereby respectfully requests that the court deny the Defendants' Motion to Dismiss Complaint pursuant to Rule 12(b)(6).

        Respectfully Submitted,
        Margaret Crittendon


By: _____/s/_____
      Of Counsel

R. Barry Rowell, Esq. (Virginia State Bar #72255)
Valverde & Rowell, PC
3500 Virginia Beach Blvd., Suite 110
Virginia Beach, VA 23452
Tel. 757.422.8472
Fax. 757.282.2502
Email – Barry@ValverdeRowell.com
Attorney for Plaintiff, Margaret Crittendon

10

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of November, 2013, I will electronically file the foregoing with the clerk of court, using the CM/ECF system, which will then send a notification of such filing to the following:

Vijay K. Mago, Esq.
LeClairRyan
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
vijay.mago@leclairryan.com

David E. Constine, III, Esq.
Troutman Sanders LLP
1001 Haxall Point (23219)
P O Box 1122
Richmond, VA 23218
david.constine@troutmansanders.com

Sara Berg Rafal
Virginia State Bar No. 43840
Counsel for Defendants
WILLIAMS MULLEN, P.C.
222 Central Park Avenue, Suite 1700
Virginia Beach, Virginia 23462
Telephone: (757) 499-8800
Facsimile: (757) 473-0395
srafal@williamsmullen.com

                                                /s/
                                      R. Barry Rowell, Esq.
                                      (Virginia State Bar #72255)
                                      Valverde & Rowell, PC
                                      3500 Virginia Beach Blvd., Suite 110
                                      Virginia Beach, VA 23452
                                      Tel. 757.422.8472
                                      Fax. 757.282.2502
                                      Email – Barry@ValverdeRowell.com
                                      Attorney for Plaintiff, Margaret Crittendon